IN RE:                                                              :
                                                                   : **Chapter 13**
Shirretha L. Thurmond                                              :
6404 N. Park Ave, Philadelphia, PA [19126-3634]                   : **Bankruptcy No. 24-13166**
215-768-8077 ms.shirretha@gmail.com                               :
                                                                   :
                                                                   :
          Sui JURIS Beneficiary ,                                 :
_____                          :
                                                                   :
**Shirretha L; THURMOND**                                         : **Civil Case No. 180202085**
                                                                   : **Civil Case No. 25-0200186**
               "Beneficiary"                                      :
                                                                   :
**v.**                                                            :
                                                            :
**Deutsche Bank National Trust Company**, as Trustee              :
**HSI Asset Securitization Corporation Trust 2007-HE1**           :
**Pass THROUGH CERTIFICATES 2007-HE1 RMBS**                       :
        Movant, **NON-LENDER UNSECURED PARTY**                    :
        **"POWER OF ATTORNEY DIED 9/21/2007"**                    :
                                                                   :
                "Movants"                                          :
_____                          :

---

**MOTION FOR CONTINUANCE OF TRIAL HEARING TO UNTIL  AFTER ADVERSARY COMPLAINT HEARING**

---

    This **MOTION FOR CONTINUANCE from** "THURMOND" aka the ("Beneficiary") the

owner of real property known as and located at 6404 N. Park Avenue, Philadelphia, PA 19126.


    "Beneficiary" aka "Thurmond" Motion for Continuance for Trial scheduled 9/4/25
allowance of Adversary Complaint as Deutsche Bank National Trust Company was untimely
responding to Complaint and did not respond until after August 20, 2025 and as of today,
documents have not been served by US MAIL.

    As a debt collector that does not rightfully

own the debt, as the "Movants" known legal to fall pursuant to the **Fair Debt Collection**

**Practices Act under 15 USC 1692g Validation of Debts.**

SEP - 3 2025


*15 USC 1692g*

*§ 809.  Validation of debts*
*(a) Notice of debt; contents*
*Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing --*

*(1) the amount of the debt;*

*(2) the name of the creditor to whom the debt is owed;*

*(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;*

*(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and*

*(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.*

*(b) Disputed debts*
*If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.*

*(c) Admission of liability*
*The failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer.*

*(d) Legal pleadings*
*A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a).*

*(e) Notice provisions*
*The sending or delivery of any form or notice which does not relate to the collection of a debt and is expressly required by title 26, title V of Gramm-Leach-Bliley Act [15 U.S.C. 6801 et seq.], or any provision of Federal or State law relating to notice of data security breach or privacy, or any regulation prescribed under any such provision of law, shall not be treated as an initial communication in connection with debt collection for purposes of this section.*

"Beneficiary"  requests this hearing to be continued to a date after the Adversary Complaint

legal response timeline to acquire additional necessary legal evidence and Proof of Claim to be

heard as facts'Beneficiary' for scheduled Trial due to the complexities of legal issues directly

affecting the claim, beneficiaries and equitable interest rights for relief.

1. **Adversary No. No. 25-00173**-djb - Adversary Complaint filed in UNITED STATES
   BANKRUPTCY COURT UNITED STATES BANKRUPTCY COURT FOR THE
   EASTERN DISTRICT OF PENNSYLVANIA

   **WHEREFORE,** "**Beneficiary**" requests hearing for this case to be continued to a

date after theAdversary Complaint No. 25-00173-djb response timeline of August 7-12,

2025 to acquire additional necessary legal evidence and Proof of Claim necessary for

Chapter 13 Plan and Confirmation pursuant to **Fair Debt Collection Practices Act under 15**

**USC 1692g Validation of Debts.**

   Date: SEPTEMBER 3, 2025

   Respectfully submitted,

   Shirretha Thurmond
   6404 North Park Avenue
   Philadelphia, PA  19126
   Telephone:  215-768-8077
   Email:ms.shirretha@gmail.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been filed electronically on the 3RD **day of SEPTEMBER, 2025**.   Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.   Parties may access this filing through the Court's electronic filing.

| None. | |
|-------|--|

The undersigned further certifies that a true copy of the foregoing was served on the following parties via First Class, U.S. Mail, postage prepaid, on the 3RD **day of SEPTEMBER, 2025** properly addressed as follows:

DEUTSCHE BANK COUNSEL
ROBERTSON, ANSHUTZ, SCNEID, CRANE &
PARTNERS
6409 CONGRESS AVE
#100
BOCA RATON, FL 33487

Respectfully Submitted,

Shirretha Thurmond/ Debtor/Pro Se
6404 North Park Avenue
Philadelphia, PA  19126
Telephone:  215-768-8077

Exhibit A



# U.S. Department of
# JUSTICE

The Department of Justice is posting this court document as a courtesy to the public. An official copy of this court document can be obtained (irrespective of any markings that may indicate that the document was filed under seal or otherwise marked as not available for public dissemination) on the Public Access to Court Electronic Records website at https://pacer.uscourts.gov. In some cases, the Department may have edited the document to redact personally identifiable information (PII) such as addresses, phone numbers, bank account numbers, or similar information, and to make the document accessible under Section 508 of the Rehabilitation Act of 1973, which requires federal agencies to make electronic information accessible to people with disabilities.

FILED

SEP - 3 2025

TIMOTHY McGRATH, CLERK
BY_____ DEP. CLERK

Credit Suisse AG ceased to exist and all its assets, liabilities and contracts transferred by

operation of law to UBS AG.

UBS Group AG, UBS AG, and UBS Business Solutions AG, which are not defendants

in this matter, also agree, pursuant to the authority granted by their respective Boards of

Directors, to the terms and obligations set forth in a separate Certification, appended as

Attachment A, and fully incorporated herein.  The terms of this Agreement are as follows:

### 1.    Offense and Maximum Penalties

The defendant agrees to waive indictment and plead guilty to a single-count Criminal

Information, charging the defendant with conspiracy to commit offenses against the United

States, to wit, violations of Title 26, United States Code, Section 7206(2), the aiding, assisting,

procuring, counseling, and advising of the preparation and presentation of false income tax

returns to the Internal Revenue Service of the Treasury Department ("IRS"), in violation of Title

18, United States Code, Section 371. The maximum penalties for this offense are: a maximum

possible fine of $500,000, twice the gross gain derived from the offense, or twice the gross loss,

whichever is greatest; full restitution; a term of probation of no more than five (5) years; and a

special assessment.

### 2.    Corporate Authorization

The defendant agrees that this Agreement is executed by authorized corporate

representatives of CREDIT SUISSE SERVICES AG.  The defendant further agrees that the

Certificate of Corporate Resolutions attached as Attachment B was duly adopted by the Board of

Directors of CREDIT SUISSE SERVICES AG and represents that the signatures on this

---

this Agreement shall mean, collectively, Credit Suisse AG, UBS Group AG, UBS AG, and
UBS Business Solutions AG and any of their respective subsidiaries and branches.

accurately reflects its criminal conduct. The defendant admits the facts set forth in the Statement of Facts and agrees that those facts establish guilt of the offense charged beyond a reasonable doubt. The Statement of Facts, which is hereby incorporated into this Agreement, constitutes a stipulation of facts for purposes of Section 1B1.2(c) of the Sentencing Guidelines.

**4.     Breach of the 2014 Credit Suisse Plea Agreement**

In May 2014, pursuant to a plea agreement, Credit Suisse AG pleaded guilty to a one-count Criminal Information in the U.S. District Court for the Eastern District of Virginia, which charged it with conspiracy to commit a violation of 26 U.S.C. § 7206(2), the aiding, assisting, procuring, counseling, and advising the preparation and presentation of false income tax returns to the IRS, in violation of 18 U.S.C. § 371.   A copy of that Plea Agreement is attached to this Agreement as Attachment D, and is hereinafter referred to as the "2014 Plea Agreement."

Further, the defendant acknowledges that, despite the efforts made by the defendant and Credit Suisse AG to respond to the conduct at issue in the 2014 Plea Agreement, Credit Suisse AG's weak compliance programs, Know Your Customer procedures, and account oversight, governed in part by the defendant, failed to prevent Credit Suisse AG employees from opening and servicing undeclared U.S. accounts.

Credit Suisse AG breached the 2014 Plea Agreement in at least three ways: First, Credit Suisse AG failed to close some recalcitrant accounts, as defined in Section 1471(d)(6) of the Internal Revenue Code, that it knew to be U.S. accounts in a timely fashion, in violation of Paragraph 7(B)(5) of the 2014 Plea Agreement.

Second, Credit Suisse AG opened some accounts for U.S. persons after the 2014 Plea Agreement under circumstances where the accounts were not properly documented as U.S. Related accounts (as defined in Paragraph I.B.9 of the Program for Non-Prosecution Agreements or Non-Target Letters for Swiss Banks (the "Swiss Bank Program"), without

6.    **Applicable United States Sentencing Guidelines Provisions**

The defendant agrees that pursuant to Title 18, United States Code, Section 3571(d), this

Court is authorized to impose a fine of $217,261,890 (as detailed below) in this case, and the

defendant knowingly, intelligently, and voluntarily waives any constitutional or statutory

objection to the imposition of such a fine. The parties' agreement herein to any guideline

sentencing factors constitutes proof of those factors sufficient to satisfy any applicable burden of

proof. The defendant also understands that if the Court accepts this Agreement, the Court is

bound by the sentencing provisions in both this paragraph and paragraph 7.

The parties stipulate that the 2024 United States Sentencing Guidelines apply to this

matter and to the factual predicates set forth below. The parties stipulate that the following

Sentencing Guidelines apply to Count One of the Criminal Information:

a.    The parties stipulate that pursuant to U.S.S.G. §§ 8C2.1(a) and 8C2.3(a), the

Guidelines provision applicable to the offense to be charged in the Information is U.S.S.G.

§ 2T1.9. Pursuant to U.S.S.G. § 2T1.9(a), the base offense level is the greater of the offense

level determined from U.S.S.G. § 2T1.4 or 10. Pursuant to U.S.S.G. §§ 2T1.4 and 2T4.1(M),

because the tax loss was greater than $65,000,000 and less than $150,000,000, the base offense

level is 30.

b.    The parties stipulate that pursuant to U.S.S.G. § 2T1.1(b)(2), because the offense

involved sophisticated means, the base offense level is increased by two levels. In accordance

with the above, the applicable Guidelines Offense Level is 32.

c.    Pursuant to the U.S.S.G. § 8C2.4(a), the base fine is the greatest of: the amount

from the table in subsection U.S.S.G. § 8C2.4(d) corresponding to the offense level determined

under § 8C2.3; the pecuniary gain to the organization from the offense; or the pecuniary loss

from the offense caused by the organization, to the extent the loss was caused intentionally,

parties hereby agree that the appropriate fine in this case is $217,261,890. No cooperation reduction has been granted due to the breach of the 2014 Plea Agreement. The United States and the defendant have not agreed on any further issues related to the applicability of Sentencing Guidelines provisions other than those set forth in this Agreement.

### 7.    Agreed Disposition

Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendant agree that the appropriate disposition of the case is as set forth above, and agree to recommend jointly that the Court impose a sentence requiring the defendant to pay a total amount of $371,908,909. Specifically, the defendant agrees to pay the following: (1) a fine in the amount of $217,261,890 to be paid to the Clerk of Court; (2) a mandatory Special Assessment of $400 to be paid to the Clerk of the Court; (3) restitution (inclusive of interest) in the amount of $46,015,674 to be paid to the IRS; and (4) forfeiture of $108,630,945 to the United States, as set forth below.

### a.    Criminal Fine

Assuming the defendant accepts responsibility as outlined in this Agreement, the parties will agree to the imposition of a fine in the amount of $217,261,890 payable to the Clerk of Court for the United States District Court for the Eastern District of Virginia. Should the defendant elect to make payments by wire transfer, such wire transfer shall list as the beneficiary the U.S. District Courts - Eastern District of Virginia, or such other entity as specified in wire transfer instructions from the Clerk. Whether payment is made by check or by wire transfer, the payment shall note the case name and number on the payment. The parties agree that the fine amount shall be paid within seven days of entry of the guilty plea.

The defendant acknowledges that no tax deduction, foreign or domestic, may be sought in connection with the payment of any part of this $217,261,890 fine. The defendant shall not

d.    **Forfeiture**

The defendant agrees that it will forfeit $108,630,945 (the "Forfeiture Amount") to the

United States, representing a substitute *res* for the approximate gross fees that U.S. taxpayers

with undeclared accounts paid to the former Credit Suisse AG from 2008 through at least 2021.

The defendant agrees that the Forfeiture Amount is subject to civil forfeiture to the United

States pursuant to 18 U.S.C. § 981(a)(1)(C), as alleged in the civil forfeiture complaint (the

"Civil Forfeiture Complaint"), a copy of which is attached hereto as Attachment E, which will

be filed against the Forfeiture Amount.  The Forfeiture Amount shall be sent by wire transfer to

a seized asset deposit account maintained by the United States Department of the Treasury

within seven days of the entry of the plea.  If the defendant fails to timely make the payment

required under this paragraph, interest (at the rate specified in 28 U.S.C. § 1961) shall accrue on

the unpaid balance through the date of payment.  Upon payment of the Forfeiture Amount, the

defendant shall release any and all claims it may have to such funds and execute such

documents as necessary to accomplish the forfeiture of the funds.  The defendant agrees this

Agreement, the Information, and the Statement of Facts may be attached and incorporated into a

Civil Forfeiture Complaint.  By this Agreement, the defendant expressly waives service of the

Civil Forfeiture Complaint and agrees that a Judgment of Forfeiture may be entered against the

Forfeiture Amount.  The defendant also agrees that the facts contained in the Information and

Statement of Facts are sufficient to establish that the Forfeiture Amount is subject to civil

forfeiture to the United States.

e.    **Probation and Term of Agreement**

The parties stipulate that pursuant to U.S.S.G. §§ 8D1.1 and 8D1.2(a)(1), the defendant

will be subject to a three-year term of probation (the "Term" of this Agreement), which term

will start on the date that the Agreement is accepted by the Court.  The parties agree, pursuant

examinations, investigations, or proceedings, including all appeals, involving such matters are

concluded. Specifically, the defendant agrees that it will:

(1)      truthfully, completely, and promptly disclose all information, and

promptly respond to the Offices' inquiries, with respect to the accounts and activities of the

defendant and Credit Suisse AG, its officers and employees, and others concerning all such

matters related to the Offices' Investigation.  Subject to applicable laws and regulations, the

defendant shall disclose to the Offices that it has discovered new information relating to Legacy

Credit Suisse U.S. Accounts, including information that supplements or is inconsistent with

representations and materials previously provided to the Offices, no later than 30 days from

discovery.  With respect to such accounts over $50,000 or part of a larger relationship, the

defendant shall provide information as described in Part II.D.2.b.vi of the Swiss Bank Program

required to be provided under this Agreement  or other such information at the Department's

request that is not protected by a valid claim of privilege or work product, no later than 90 days

from discovery, or as soon as practicable, with notice to the Department within 90 days.  With

respect to accounts in other booking centers, the defendant agrees to provide information

described in Part II.D.2.b.vi of the Swiss Bank Program required to be provided under this

Agreement upon request.  All other terms of this Agreement shall apply with respect to any

newly disclosed information;

(2)      retain all records relating to the Offices' Investigation, for a period of ten

years from the date of the execution of this Agreement;

(3)      upon request, assist the Department of Justice or any designated federal

law enforcement agency in any investigation, prosecution, or civil proceeding arising out of or

related to the Offices' Investigation by providing logistical and technical support for any

meeting, interview, grand jury proceeding, or any trial or other court proceeding;

connection with any state civil or criminal tax proceedings brought by such state law

enforcement agency against an individual arising out of or related to the Offices' Investigation.

    **b.**    <u>**Undertakings During the Term of the Agreement**</u>

    During the Term of the Agreement, the defendant also agrees to, subject to applicable

laws and regulations:

    (1)    supplement as soon as practicable, transaction information previously

produced in response to requests based on Part II.D.2.b.vi of the Swiss Bank Program, to

include all identified Legacy Credit Suisse U.S. Accounts over $50,000 unless part of a larger

relationship, and, upon request, identified Legacy Credit Suisse U.S. Accounts in booking

centers other than Switzerland, closed in the period from January 1, 2010 through the date of

the execution of the Agreement, and any closed accounts related to the Offices' Investigation

about which the Department of Justice specifically inquires, in the format requested by the

Department of Justice;

    (2)    make reasonable efforts to implement the closure of recalcitrant Legacy

Credit Suisse U.S. Accounts and undertake related procedures, to the extent that it has not

already done so, as set forth in Part II.G of the Swiss Bank Program;

    (3)    provide all necessary information and assist the United States with the

drafting of treaty requests to seek account records and other information, and will collect and

maintain all records that are potentially responsive to such treaty requests to facilitate prompt

responses;

    (4)    submit quarterly reports to the Offices regarding the status of Legacy

Credit Suisse U.S. Accounts for which the bank does not have indicia of tax compliance and

remediation efforts in the Switzerland booking center, including the monitoring and closing of

identified Legacy Credit Suisse U.S. Accounts, and future plans to change, implement, and/or

Attachment F to this Agreement.

Any information provided pursuant to this Agreement may be used by the Offices for any purpose, except as otherwise limited in this Agreement or by applicable law. Nothing in this Agreement shall require the defendant to waive any protections of the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege. Nothing in this Agreement shall require the defendant to violate the law of any jurisdiction in which it operates.

### 9. Judicial Acceptance

Because this Agreement is made under Rule 11(c)(l)(C) of the Federal Rules of Criminal Procedure, the defendant understands that, if the Court accepts this Agreement, the Court will be bound by its terms for sentencing purposes. If, however, the Court rejects this Agreement and does not agree to impose the specific sentence as agreed to by the parties herein, neither the United States nor the defendant shall be obligated to proceed under the terms of this Agreement, each shall be restored to their full rights, claims and defenses without prejudice and neither shall be bound by any statement contained in the Statement of Facts. For avoidance of doubt, in that circumstance, none of the waiver provisions of this Agreement shall operate against the defendant.

The Offices and the defendant understand that the Court retains complete discretion to accept or reject the recommended sentence provided for in this Agreement. If the Court does not accept the recommended sentence, the parties agree that this Agreement shall be rendered void. If the Court does not accept the recommended sentence, the parties agree that the defendant shall be free to withdraw its guilty plea pursuant to Fed. R. Crim. P. 11(c)(5) and (d). If the defendant withdraws its plea of guilty because the Court does not accept the recommended sentence, the parties agree that this Agreement, the Statement of Facts, the guilty plea, and any statement made in the course of plea discussions with an attorney for the United States shall not be admissible

16

limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C.

§ 552, or the Privacy Act, 5 U.S.C. § 552a. The defendant also knowingly waives all rights

with respect to venue on Count One in the Information, and agrees to be prosecuted on this

charge in the Eastern District of Virginia.

### 12.     Immunity from Further Prosecution

The Offices will not further criminally prosecute the defendant or the Affiliates

(i) relating to any of the conduct described in either the Information or the Statement of Facts,

(ii) for good-faith disclosures involving Legacy Credit Suisse U.S. Accounts made by the

defendant or the Affiliates to the Offices during cooperation provided prior to this Agreement,

(iii) for good-faith disclosures through the end of 2026 of additional Legacy Credit Suisse U.S.

Accounts identified in reviews as part of the process of integrating Credit Suisse with UBS, as

long as such disclosure was timely upon identification and misconduct was appropriately and

timely remediated upon identification, and (iv) good-faith disclosures of additional Legacy

Credit Suisse U.S. Accounts (and related accounts) pursuant to Paragraph 8.a(1) of this

Agreement, as long as such disclosure was timely upon identification, misconduct was

appropriately and timely remediated, and there are no aggravating factors. The Offices also

agree that this Agreement fully and completely resolves any obligations by Credit Suisse AG or

any successor, including Credit Suisse Services AG or any Affiliates, arising from the 2014

Plea Agreement, and the remedies for any breach of the 2014 Plea Agreement are no longer

available to the Offices.

This Agreement does not provide any protection against prosecution except as set forth

above, and does not apply to any individuals. The defendant understands and agrees that this

Agreement between the Offices and the defendant does not bind any other division or section of

the Department of Justice or any other federal, state, or local prosecuting, administrative, or

against the defendant. The defendant waives any right to claim that statements made before or after the date of this agreement, including the Statement of Facts accompanying this agreement or adopted by the defendant and any other statements made pursuant to this or any other agreement with the United States, should be excluded or suppressed under Fed. R. Evid. 410, Fed. R. Crim. P. 11(f), the Sentencing Guidelines, or any other provision of the Constitution or federal law.

(d)     The defendant waives any and all objections to service of process and attachment of personal jurisdiction, and agrees to appear as ordered by this Court in any criminal, civil, or administrative action arising from a breach of this Agreement, including any proceeding to determine whether this Agreement has been breached or whether the defendant has violated any term of the organizational probation imposed by the Court.

(e)     Conduct disclosed in good faith by the defendant and its Affiliates to the Offices during cooperation provided prior to this Agreement, or with respect to Legacy Credit Suisse U.S. Accounts (regardless of booking center), shall not be considered a breach of this Agreement. Conduct disclosed in good faith in the future related to accounts booked outside of the Switzerland booking center shall not be considered a breach of the Agreement, but is not subject to Paragraph 12 of the Agreement.

(f)     If the Offices determine that the defendant has breached any obligations that are also conditions of probation—specifically Paragraph 8—the Offices will notify the defendant, and the defendant will have the ability to respond as described below. If, after review of the Defendant's response, the Offices maintain that the defendant has breached, they will notify the Probation Office and the Court. If the Court finds that such a breach and corresponding probation violation occurred, the Offices may pursue prosecution of the Defendant as discussed above.

15.    **Press and Public Statements**

The defendant and the Affiliates shall not, through present or future attorneys, officers,

directors, employees, agents, or any other person authorized to speak for the defendant make

any public statement, in litigation or otherwise, contradicting the acceptance of responsibility

by the defendant set forth above or the facts described in the Statement of Facts. Any such

contradictory statement shall, subject to cure rights of the defendant described below, constitute

a breach of this Agreement. The decision whether any public statement by any such person

contradicting a fact contained in the Statement of Facts will be imputed to the defendant for the

purpose of determining whether it has breached this Agreement shall be at the sole discretion of

the United States. If the United States determines that a public statement by any such person

contradicts in whole or in part a statement contained in the attached Statement of Facts, the

United States shall so notify the defendant, and the defendant may avoid a breach of this

Agreement by publicly repudiating such statement(s) within five business days after

notification. The defendant shall be permitted to raise defenses and to assert affirmative claims

in other proceedings relating to the matters set forth in the Statement of Facts provided that

such defenses and claims do not contradict, in whole or in part, a statement contained in the

attached Statement of Facts. This section does not apply to any statement made by any present

or former officer, director, employee, or agent of the defendant in the course of any criminal,

regulatory, or civil case initiated against such individual, unless such individual is speaking on

behalf of the defendant.

The defendant agrees that if it or the Affiliates issues a press release or holds any press

conference in connection with this Agreement, the defendant shall first consult with the United

States to determine (a) whether the text of the release or proposed statements at the press

conference are true and accurate with respect to matters between the United States and the

Facts, including a continuation of criminal conduct described in the Statement of Facts

accompanying the 2014 Credit Suisse AG's plea agreement insofar as the Credit Suisse AG did

not close all accounts and continued to open and service some accounts that violated Credit

Suisse AG policies with respect to U.S. accounts and which should have been reported to U.S.

authorities;

(b)    Credit Suisse AG's breach of its 2014 Plea Agreement, both by the continuation

of aiding and abetting tax crimes by U.S. citizens and by committing other federal crimes since

the 2014 guilty plea;

(c)    the defendant did not receive voluntary disclosure credit pursuant to the E.D. Va.

Voluntary Self-Disclosure policy, the Corporate Voluntary Self-Disclosure Policy of the Tax

Division, the Criminal Division's Corporate Enforcement and Voluntary Self-Disclosure

Policy, or pursuant to U.S.S.G. § 8C2.5(g)(1), because it did not voluntarily and timely disclose

to the United States the conduct described in the Statement of Facts;

(d)    the defendant did not receive credit for its cooperation with the Offices'

investigation of Credit Suisse AG related to the Switzerland booking center pursuant to

U.S.S.G. § 8C2.5(g)(2) because the awarding of such cooperation credit is inconsistent with

Credit Suisse AG's breach of the 2014 Plea Agreement;

(e)    the defendant has undertaken remedial efforts, including the development and

implementation of additional compliance and training programs and policies since the entry of

the 2014 Plea Agreement and the sanctioning or termination of individuals involved in the

misconduct;

(f)    the defendant and the Offices are concurrently entering into a Non-Prosecution

Agreement (the "NPA") in connection with conduct related to accounts opened at the former

Credit Suisse AG Singapore that UBS voluntarily self-disclosed to the Offices; and

24

**FOR THE DEPARTMENT OF JUSTICE:**

KAREN E. KELLY
Chief, delegated Deputy Assistant
Attorney General for Criminal Matters
Tax Division
U.S. Department of Justice

ERIK S. SIEBERT
United States Attorney
Eastern District of Virginia
U.S. Department of Justice

_____
Mark F. Daly
Nanette L. Davis
Senior Litigation Counsel
Marissa R. Brodney
Trial Attorney

_____
Kimberly M. Shartar
Assistant United States Attorney

## CERTIFICATE OF COUNSEL

We are counsel for CREDIT SUISSE SERVICES AG in the matter covered by this Agreement. In connection with such representation, we have examined relevant CREDIT SUISSE SERVICES AG documents and have discussed this Agreement with the Board of Directors of CREDIT SUISSE SERVICES AG. Further, we have carefully reviewed every part of this Agreement with the Board of Directors and General Counsel of CREDIT SUISSE SERVICES AG. We have fully advised them of CREDIT SUISSE SERVICES's rights, possible defenses, the sentencing guidelines provisions, and the consequences of entering into this Agreement.

The Board of Directors for CREDIT SUISSE SERVICES AG were duly convened on April 25, 2025 and by the resolution of such Board of Directors, CREDIT SUISSE SERVICES AG's representatives have been duly authorized to enter into this Agreement on behalf of CREDIT SUISSE SERVICES AG. This Agreement has been duly and validly authorized, executed, and delivered on behalf of CREDIT SUISSE SERVICES AG and is a valid and binding obligation of CREDIT SUISSE SERVICES AG. To our knowledge, CREDIT SUISSE SERVICES AG's decision to enter into this Agreement is an informed and voluntary one.

Date: _May 5, 2025_      By: _____
                              Mark Filip
                              Nicolas Thompson
                              Kirkland & Ellis, LLP

                              Eric Stupp
                              Joel Fischer
                              Bär & Karrer AG
                              Counsel to Credit Suisse Services AG

29



**Office of Public Affairs**
U.S. Department of Justice

PRESS RELEASE

# Credit Suisse Services AG Admits to Conspiring with U.S. Taxpayers to Hide Assets and Income in Offshore Accounts and Admits that Credit Suisse Breached Its Prior Plea Agreement

Monday, May 5, 2025



FILED

SEP - 3 2025

TIMOTHY McGRATH, CLERK
BY_____ DEP. CLERK

**For Immediate Release**

Office of Public Affairs

## Credit Suisse Services AG Pleads Guilty to Tax Crimes, Signs a Separate Non-Prosecution Agreement Related to Conduct in Singapore, and Agrees to Pay More Than $510M

Credit Suisse Services AG pleaded guilty and was sentenced today to conspiring to hide more than $4 billion from the IRS in at least 475 offshore accounts. The guilty plea by the Swiss corporation is the result of a years-long investigation by U.S. law enforcement to uncover financial fraud and abuse.

In addition to the plea, Credit Suisse Services AG entered into a non-prosecution agreement (NPA) with the Justice Department's Tax Division and U.S. Attorney's Office for the Eastern District of Virginia in connection with U.S. Accounts booked at Credit Suisse AG Singapore. Under the NPA, Credit Suisse Services AG agreed to cooperate with the Justice Department in ongoing investigations and to pay significant monetary penalties for maintaining accounts in Singapore on behalf of U.S. taxpayers who were using offshore

Senior Litigation Counsels Nanette L. Davis and Mark F. Daly as well as Trial Attorney Marissa R. Brodney of the Tax Division, and Assistant U.S. Attorney Kimberly M. Shartar for the Eastern District of Virginia are prosecuting the case.

Credit Suisse Services AG - NPA - Statement of Facts.pdf

Credit Suisse Services AG - NPA.pdf

US v. Credit Suisse Service AG - Statement of Facts.pdf

US v Credit Suisse Services AG - Information.pdf

US v. Credit Suisse Service AG - Plea Agreement.pdf

*Updated August 13, 2025*

**Topic**

TAX

**Components**

Tax Division

USAO - Virginia, Eastern

Press Release Number: 25-467

# Related Content

PRESS RELEASE

### Four Hawaii Individuals Convicted of Tax Refund Fraud Scheme

**August 29, 2025**

Exhibit C

8-K 1 v073494_8k.htm

UNITED STATES
## SECURITIES AND EXCHANGE COMMISSION

Washington, D.C. 20549

## FORM 8-K

### CURRENT REPORT

PURSUANT TO SECTION 13 OR 15(d) OF THE
SECURITIES AND EXCHANGE ACT OF 1934

FILED
SEP - 3 2025
TIMOTHY McGRATH, CLERK
BY_____ DEP CLERK

(W)

Date of Report (Date of earliest event reported)

April 30, 2007

SAXON ASSET SECURITIES COMPANY (as Depositor under the Pooling and Servicing Agreement, dated as of April 1, 2007, providing for the issuance of Mortgage Loan Asset Backed Certificates, Series 2007-2)

_____Saxon Asset Securities Company_____
(Exact Name of Registrant as Specified in its Charter)

| Virginia | 333-131712 | 54-1810895 |
|---|---|---|
| (State or Other Jurisdiction Of Incorporation) | (Commission File Number) | (I.R.S. Employer Identification No.) |

| 4860 Cox Road Glen Allen, Virginia | 23060 |
|---|---|
| (Address of Principal Executive Offices) | (Zip Code) |

Registrant's telephone number, including area code: (804) 967-7400

_____No Change_____
(Former Name or Former Address, if Changed Since Last Report)

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions:

o Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)
o Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)
o Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))
o Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c)

Item 8.01. Other Events

The Registrant registered issuances of Mortgage Loan Asset Backed Certificates, Series 2007-2 on a delayed or continuous basis pursuant to Rule 415 under the Securities Act of 1933, as amended (the "Act"), by Registration Statement on Form S-3 (Registration File No. 333-131712) (the "Registration Statement"). Pursuant to the Registration Statement, the Registrant issued $828,036,000 in aggregate principal amount of Class A-1, Class A-2a, Class A-2b, Class A-2c, Class A-2d, Class M-1, Class M-2, Class M-3, Class M-4, Class M-5, Class M-6, Class B-1, Class B-2, Class B-3, Class OC, Class P and Class R Certificates (the "Certificates") of its Mortgage Loan Asset Backed Certificates, Series 2007-2 on April 30, 2007. This Current Report on Form 8-K is being filed to satisfy an undertaking, contained in the definitive Prospectus, dated April 26, 2006, as supplemented by the Prospectus Supplement, dated April 25, 2007 (the "Prospectus Supplement"), to file a copy of the Pooling and Servicing Agreement (as defined below) and certain other agreements executed in connection with the issuance of the Certificates.

The Certificates were issued pursuant to a Pooling and Servicing Agreement (the "Pooling and Servicing Agreement"), attached hereto as Exhibit 4.1, dated as of April 1, 2007, among Saxon Asset Securities Company, as Depositor, Saxon Mortgage Services, Inc., as Servicer and Deutsche Bank National Trust Company, as Trustee. The Certificates evidence all of the beneficial ownership interest in a trust fund (the "Trust Fund") that consists primarily of two groups of certain conventional, first and second lien, fixed and adjustable rate, fully amortizing and balloon, residential mortgage loans (the "Mortgage Loans") with an aggregate outstanding principal balance of approximately $870,703,726 as of April 1, 2007, together with certain other assets. Capitalized terms used herein and not otherwise defined shall have the meanings assigned to them in the Pooling and Servicing Agreement.

Sales of Securities and Use of Proceeds.

On April 30, 2007, the following classes of certificates in the following amounts were sold by the registrant to affiliates of the registrant in private placements in reliance on Section 4(2) of the Securities Act of 1933:

| Class | Initial Principal Balance |
|---|---|
| Class OC | $42,667,726 |
| Class P | $1,000.00 |
| Class R | N/A |

The net proceeds from the sale of these certificates were applied by the registrant toward the purchase of the mortgage loans constituting the pool assets.

2

## SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934, the Registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

SAXON ASSET SECURITIES COMPANY

By: /s/ Ernest G. Bretana_____
     Name: Ernest G. Bretana
     Title: Executive Vice President

Dated:  May 11, 2007

Exhibit D

8-K 1 p07-0766_8k.htm CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP.

## UNITED STATES
## SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

### FORM 8-K

### CURRENT REPORT

Pursuant to Section 13 or 15(d) of the
Securities Exchange Act of 1934

Date of Report (Date of earliest event reported) April 30, 2007

CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP. (as company under a
Pooling and Servicing Agreement, dated as of April 1, 2007, providing for, inter alia, the issuance
of Home Equity Mortgage Trust 2007-2 Home Equity Pass-Through Certificates, Series 2007-2)

Home Equity Mortgage Trust 2007-2
*(Exact name of issuing entity as specified in its charter)*

Credit Suisse First Boston Mortgage Securities Corp.
*(Exact name of depositor as specified in its charter)*

DLJ Mortgage Capital, Inc.
*(Exact name of sponsor as specified in its charter)*

| Delaware<br>(State or Other Jurisdiction of<br>Incorporation) | 333-135481-19<br>(Commission File<br>Number) | 13-3320910<br>(I.R.S. Employer<br>Identification No.) |
|---|---|---|
| 11 Madison Avenue, New<br>York, New York<br>(Address of Principal<br>Executive Offices) | | 10010<br>(Zip Code) |

Registrant's telephone number, including area code, is: (212) 538-3000

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions (see General Instruction A.2. below):

o  Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

o  Soliciting material pursuant to Rule 14a-12(b) under the Exchange Act (17 CFR 240.14a-12(b))

o  Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

o  Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

Item 7.01.                    <u>Updated Loan-Level Information</u>.

Attached hereto as Exhibit 99.1 is updated loan-level information relating to the Mortgage Loans comprising part of the Trust Estate created pursuant to the Pooling and Servicing Agreement, dated as of April 1, 2007, among Credit Suisse First Boston Mortgage Securities Corp., as depositor, DLJ Mortgage Capital, Inc. as seller, U.S. Bank National Association, as trustee and Select Portfolio Servicing, Inc., as servicer.

This information is being furnished pursuant to Item 7.01, is not to be considered "filed" under the Securities Exchange Act of 1934, as amended (the "Exchange Act") and is not incorporated by reference into any of the Registrant's previous or future filings under the Securities Act of 1933, as amended, or the Exchange Act.

| <u>Exhibit No.</u> | <u>Description</u> |
|---|---|
| 99.1 | Updated loan-level information relating to the Mortgage Loans comprising part of the Trust Estate created pursuant to the Pooling and Servicing Agreement, dated as of April 1, 2007, among Credit Suisse First Boston Mortgage Securities Corp., as depositor, DLJ Mortgage Capital, Inc. as seller, U.S. Bank National Association, as trustee and Select Portfolio Servicing, Inc., as servicer. |
| 99.2 | Updated loan-level information relating to the Mortgage Loans comprising part of the Trust Estate created pursuant to the Pooling and Servicing Agreement, dated as of April 1, 2007, among Credit Suisse First Boston Mortgage Securities Corp., as depositor, DLJ Mortgage Capital, Inc. as seller, U.S. Bank National Association, as trustee and Select Portfolio Servicing, Inc., as servicer. |

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned thereunto duly authorized.

CREDIT SUISSE FIRST BOSTON
MORTGAGE SECURITIES CORP.

By:    /s/ Peter J. Sack

Name: Peter J. Sack
Title:  Vice President

Dated: June 15, 2007

EXHIBIT INDEX

Item 601 (a) of                          Sequentially
Regulation S-K                           Numbered
Exhibit No.                              Description

99.1        Updated loan-level information relating to the Mortgage Loans
            comprising part of the Trust Estate created pursuant to the Pooling and
            Servicing Agreement, dated as of April 1, 2007, among Credit Suisse
            First Boston Mortgage Securities Corp., as depositor, DLJ Mortgage
            Capital, Inc. as seller, U.S. Bank National Association, as trustee and
            Select Portfolio Servicing, Inc., as servicer.

99.2        Updated loan-level information relating to the Mortgage Loans
            comprising part of the Trust Estate created pursuant to the Pooling and
            Servicing Agreement, dated as of April 1, 2007, among Credit Suisse
            First Boston Mortgage Securities Corp., as depositor, DLJ Mortgage
            Capital, Inc. as seller, U.S. Bank National Association, as trustee and
            Select Portfolio Servicing, Inc., as servicer.

*Exhibit E*

**Form 56**
(Rev. November 2022)
Department of the Treasury
Internal Revenue Service

# Notice Concerning Fiduciary Relationship

(Internal Revenue Code Sections 6036 and 6903)

Go to *www.irs.gov/Form56* for instructions and the latest information.

OMB No. 1545-0013

## Part I — Identification

| Name of person for whom you are acting (as shown on the tax return) | Identifying number | Decedent's social security no. |
|---|---|---|
| SHIRRETHA LAVETTE THURMOND TRUST | 98█████ | |

Address of person for whom you are acting (number, street, and room or suite no.)
6404 N PARK AVE

*Will provide full EIN if Required By Law To Court*

City or town, state, and ZIP code (if a foreign address, see instructions.)
PHILADELPHIA, PA [19126-3634]

Fiduciary's name
Ms. Shirretha Lavette; Thurmond

Address of fiduciary (number, street, and room or suite no.)
6404 N PARK AVE

| City or town, state, and ZIP code | Telephone number (optional) |
|---|---|
| PHILADELPHIA, PA [19126-3634] | ( 833 ) 278-5903 |

## Section A. Authority

**1** Authority for fiduciary relationship. Check applicable box:

- a ☐ Court appointment of testate estate (valid will exists)
- b ☐ Court appointment of intestate estate (no valid will exists)
- c ☐ Court appointment as guardian or conservator
- d ☑ Fiduciary of intestate estate
- e ☑ Valid trust instrument and amendments
- f ☐ Bankruptcy or assignment for the benefit of creditors
- g ☐ Other. Describe: _____

SEP - 3 2025

TIMOTHY McGRATH, CLERK
BY DEPUTY

**2a** If box 1a, 1b, or 1d is checked, enter the date of death: _____

**b** If box 1c, 1e, 1f, or 1g is checked, enter the date of appointment, taking office, or assignment or transfer of assets: _____

## Section B. Nature of Liability and Tax Notices

**3** Type of taxes (check all that apply):  ☑ Income   ☐ Gift   ☑ Estate   ☑ Generation-skipping transfer   ☑ Employment   ☑ Excise   ☑ Other (describe): GURANTORS TRUST

**4** Federal tax form number (check all that apply):  **a** ☐ 706 series   **b** ☐ 709   **c** ☐ 940   **d** ☐ 941, 943, 944   **e** ☐ 1040 or 1040-SR   **f** ☑ 1041   **g** ☐ 1120   **h** ☐ Other (list): _____

**5** If your authority as a fiduciary does not cover all years or tax periods, check here . . . . . . . . . ☐ and list the specific years or periods within your authority: _____

For Paperwork Reduction Act and Privacy Act Notice, see separate instructions.       Cat. No. 16375I       Form **56** (Rev. 11-2022)



SEP - 3 2025

Form 56 (Rev. 11-2022)                                                                                                    Page **2**

| **Part II** | **Revocation or Termination of Notice** |
|---|---|

### Section A—Total Revocation or Termination

**6**   Check this box if you are revoking or terminating all prior notices concerning fiduciary relationships on file with the Internal Revenue Service for the same tax matters and years or periods covered by this notice concerning fiduciary relationship   .   .   ☑

    Reason for termination of fiduciary relationship. Check applicable box:

**a**   ☐ Court order revoking fiduciary authority

**b**   ☐ Certificate of dissolution or termination of a business entity

**c**   ☐ Other. Describe: ----------------------------------------------------------------------------------------

-------------------------------------------------------------------------------------------------------------------------------

### Section B—Partial Revocation

**7a**   Check this box if you are revoking earlier notices concerning fiduciary relationships on file with the Internal Revenue Service for the same tax matters and years or periods covered by this notice concerning fiduciary relationship   .   .   .   .   .   .   ☐

**b**   Specify to whom granted, date, and address, including ZIP code.

-------------------------------------------------------------------------------------------------------------------------------

-------------------------------------------------------------------------------------------------------------------------------

### Section C—Substitute Fiduciary

**8**   Check this box if a new fiduciary or fiduciaries have been or will be substituted for the revoking or terminating fiduciary and specify the name(s) and address(es), including ZIP code(s), of the new fiduciary(ies)   .   .   .   .   .   .   .   ☐

-------------------------------------------------------------------------------------------------------------------------------

-------------------------------------------------------------------------------------------------------------------------------

| **Part III** | **Court and Administrative Proceedings** |
|---|---|

| Name of court (if other than a court proceeding, identify the type of proceeding and name of agency) | Date proceeding initiated |
|---|---|
| Address of court | Docket number of proceeding |
| City or town, state, and ZIP code | Date | Time   ☐ a.m.   ☐ p.m. | Place of other proceedings |

| **Part IV** | **Signature** |
|---|---|

**Please Sign Here**    Under penalties of perjury, I declare that I have examined this document, including any accompanying statements, and to the best of my knowledge and belief, it is true, correct, and complete.

| *(signature)* | *Fiduciary* | 8/28/25 |
|---|---|---|
| Fiduciary's signature | Title, if applicable | Date |

Form **56** (Rev. 11-2022)